# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-433-FDW

| | |
|---|---|
| SHAHID HASSAN MUSLIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ERWIN CARMICHAEL, ET AL., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1), and his incorporated motion for change of venue, (Doc. No. 1 at 12). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 4).

**I.    BACKGROUND**

*Pro se* Plaintiff Shahid Muslim has filed a civil rights suit pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, against Mecklenburg County Sheriff Irwin Carmichael and Mecklenburg County Central Jail Chaplains Dennis and Maddox.

Construing the Compliant liberally and accepting the allegations as true, Plaintiff was deprived of a Kosher or Halal diet to accommodate his sincerely held religious beliefs even though there was no legitimate penological reason for doing so. This substantially burdened Plaintiff's practice of his religion, which he believes to require the consumption of Halal meat. The Kosher diet satisfies his religious requirements and could be modified to accommodate his medical need for a high-protein diet. He was told, and documents indicate, that he was denied the Kosher diet because he is not Jewish. Providing Kosher meals to Plaintiff could be accomplished for *de minimis*

1

cost and would not cause any administrative or security problems. The only alternative offered to Plaintiff is a vegetarian diet that does not satisfy his religion's requirement to eat meat or his medical need for a high-protein diet which would result in rapid weight loss. Plaintiff was treated "harshly" by the chaplain who ignored and denied his requests. (Doc. No. 1 at 7). Plaintiff appears to allege that the unavailability of a Kosher diet caused him to go on a hunger strike. Plaintiff alleges that documents showing the reason for his denial – the fact that he is not Jewish – are being altered to remove that invalid reason for his denial.

Plaintiff brought to "facility officials'" attention that a similarly situated Jewish inmate in Plaintiff's housing unit was allowed the Kosher diet but the officials callously denied and ignored Plaintiff. (Doc. No. 1 at 3-4). The requirement that inmates must profess to follow the Jewish faith to receive Kosher meals has since been removed from the system.

Muslim inmates are also treated differently from members of other religious groups in that they are provided inadequate services of an Imam. The facility maintains a relationship with only one part-time Imam whereas there are four or five full-time Christian chaplains. The part-time Imam is rarely available to minister to Muslim inmates. During Plaintiff's 30 days at the facility, he only encountered the Imam on three occasions. The facility allows "Jumah" or Friday congregational prayer service for three or more inmates, but the unavailability of the Imam to lead the service makes this alternative means a farce. In Plaintiff's 31 months at the facility, an Imam led one Jumah prayer even though the requisite number of inmates was present on every occasion.

Plaintiff appears to seek compensatory and punitive damages, and injunctive relief.

**II. PENDING MOTIONS**

(1) <u>Motion to Change Venue</u>

Plaintiff appears to incorporate in his Complaint a motion to change venue. Plaintiff

explains that he filed a federal civil rights action against Judge Robert Conrad, the Western District of North Carolina Clerk of Courts, and court reporter, and that he has been assaulted by two United States Marshals at the federal courthouse. (Doc. No. 1 at 12).

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The threshold question when addressing a motion to transfer venue is whether the proposed transferee court is one in which the action originally may have been brought. Comm'l Equip. Co., Inc. v. Barclay Furniture Co., 738 F.Supp. 974 (W.D.N.C. June 18, 1990). If so, the subsequent decision to transfer venue is within the discretion of the court. Global Touch Solutions, LLC v. Toshiba Corp., 109 F.Supp.3d 882 (E.D. Va. 2015). District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). As a general rule, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Id. (quoting Bd. of Trs. v. Sullivant Ave. Props., LLC, 508 F.Supp.2d 473, 477 (E.D.Va. 2007)).

In the instant case, Plaintiff chose to file the action in this Court. He fails to identify another Court where this action could have been brought. See 28 U.S.C. § 1391(b). The events allegedly occurred at the Mecklenburg County Jail, and all three Defendants are employed in Mecklenburg County. Plaintiff does not allege that the Defendants reside in a district other than the Western District of North Carolina where Mecklenburg County is located. Therefore, he has failed to meet the threshold showing that there is a proposed alternate venue where the suit could have been

3

brought. Nor does Plaintiff explain why the four relevant considerations favor a transfer. Assuming that he means to argue that the interests of justice favor a transfer, this claim is too vague and conclusory to support relief. He fails to explain why his federal civil rights suit against a different judge, the clerk of court, and a court reporter prevents this Court from considering his case fairly. His allegations that U.S. Marshals mistreated him is too vague and conclusory to demonstrate that the interests of justice warrant a transfer.

Plaintiff has not demonstrated the threshold showing that this suit could have been filed in another court, or the existence of factors supporting a transfer. Therefore the motion for change of venue incorporated in Plaintiff's Complaint is denied.

**III. STANDARD OF REVIEW**

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520

(1972) (a pro se complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). A plaintiff must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

**IV.     DISCUSSION**

(1)     First Amendment Free Exercise of Religion

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. See Turner v. Safley, 482 U.S. 78, 89-91 (1987); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's

First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Substantial deference is accorded to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. Id. Any regulation of speech must not be any more encompassing than

necessary to further the penological interested involved. See Montcalm Publishing Corp. v. Beck, 80 F.3d 105, 108 (4th Cir. 1996). Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring strict scrutiny instead of reasonableness. See Lovelace v. Lee, 472 F.3d 174, 199 n.8 (4th Cir. 2006).

Plaintiff alleges that the Defendants violated his freedom to practice religion when they deprived him of a Kosher diet and failed to provide an Imam to lead prayer services, which substantially burdened his religious practice without the justification of any legitimate penological interest.

These allegations state a plausible First Amendment violation and are sufficient to pass initial review.[1]

---

[1] The Prison Litigation Reform Act ("PLRA") bars an inmate from seeking damages for mental or emotional injury suffered while in custody absent a showing of physical injury or a sexual act. 42 U.S.C. § 1997e(e). The Circuits are split regarding the scope and applicability of § 1997e(e). The majority of Circuits construe § 1997e(e) broadly, applying § 1997e(e) to First Amendment claims for compensatory damages absent physical injury, but not barring punitive damages. See Thompson v. Carter, 284 F.3d 411 (2d Cir. 2002); Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000); Hutchins v. McDaniels, 512 F.3d 193, 197-98 (5th Cir. 2007); Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004); Searles v. Van Bebber, 251 F.3d 869, 877 (10th Cir. 2001); see also Kuperman v. Wrenn, 645 F.3d 69 (1st Cir. 2011) (declining to decide whether 1997e(e) bars a claim seeking compensatory damages on a First Amendment claim "because [plaintiff's] request for nominal and punitive damages are enough to keep his claim alive."). Cf. Al-Amin v. Smith, 637 F.3d 1192 (11th Cir. 2011) (holding that § 1997e(e) bars compensatory and punitive damages for constitutional violations in the absence of physical injury).

The minority narrow approach does not apply § 1997e(e) to First Amendment claims at all because those deprivations are themselves injuries; they are not claims of mental and emotional injury that would require an accompanying physical injury. See King v. Zamiara, 788 F.3d 207, 212-13 (6th Cir. 2015); Rowe v. Shake, 196 F.3d 778, 781 (7th Cir. 1999); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998); Aref v. Lynch, 833 F.3d 242 (D.C. Cir. 2016).

The Fourth Circuit has not yet spoken on the issue. It is unclear whether the Fourth Circuit will apply § 1997e(e) to First Amendment claims, and if so, whether it will bar claims for compensatory and/or punitive damages. It is also unclear from Plaintiff's allegations whether he is claiming that he suffered any physical injury from his hunger strike that was apparently triggered by Defendants' refusal to provide Kosher meals. The Court deems it prudent under these circumstances to allow Plaintiff's claims to pass screening so that the applicability and scope of § 1997e(e) to his claims can be further developed. See, e.g., Etterson v. Newcome, 2016 WL 3912034 (E.D. Va. July 19, 2016) (denying motion to dismiss prisoner's religious claims pursuant to 1997e(e) because, *inter alia*, defendants failed to adequately address why the PLRA should limit nominal or punitive damages, or adequately address the applicability of § 1997e(e) to First Amendment claims).

7

(2) RLUIPA

RLUIPA provides, in part, that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace, 472 F.3d at 187 (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators

8

in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' … Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

Plaintiff adequately alleges that the Defendants' refusal to provide a Kosher diet and adequate Imam services for Friday prayers substantially burdened his religious practice and were not the least restrictive means of further a compelling government interest. Therefore, Plaintiff's RLUIPA claims will be permitted to proceed.

(3)   Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be

sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993). The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

Plaintiff's allegations that he was treated differently from similarly situated Jewish inmates with regards to a Kosher diet, and from Christian inmates with regards to prayer meetings, are sufficient to state an Equal Protection claim. Therefore, they will be permitted to proceed at this time.

(4) <u>Injunctive Relief</u>

A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

Plaintiff's claims for the immediate provision of Kosher meals and institution of prayer services led by an Imam are moot because he no longer resides at the Mecklenburg County Jail where the alleged incidents occurred, and he has failed to allege the existence of any conditions indicating likely recurrence. Therefore, Plaintiff's request for injunctive relief with respect to

10

Kosher meals and prayer services are dismissed as moot.

## V. CONCLUSION

For the reasons stated herein, the Court denies Plaintiff's motion for change of venue and finds that Plaintiff's First Amendment, RUILPA, and Equal Protection claims will proceed against all three Defendants. Plaintiff's claims for injunctive relief with regards to Kosher meals and prayer services are dismissed as moot.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's motion for change of venue, (Doc. No. 1 at 12), is **DENIED**.

2. Plaintiff's First Amendment, Equal Protection, and RLUIPA claims survive initial review under 28 U.S.C. § 1915(e).

3. Plaintiff's claims for injunctive relief with regards to Kosher meals and prayer services are **DISMISSED** as moot.

4. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Carmichael, Dennis,** and **Maddox**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: November 14, 2017

Frank D. Whitney
Chief United States District Judge